No.: 1:10-CV-1684

Teri B. Himebaugh, Esquire
220 Stallion Lane
Schwenksville, PA 19473
(610) 287-0216
PA ID 53603

Jeffrey Philip Paul, Esquire
124 E. Chestnut St.
Lancaster, PA 17602
(717) 735-7545
PA ID 10182

## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CYHIEN JUBA BARNES, JR.,** | : | **No.: 1:10-CV-1684** |
| **PLAINTIFF** | : | **Judge Conner** |
| **vs.** | : | |
| | : | |
| **COUNTY OF YORK** | : | |
| **28 EAST MARKET STREET** | : | |
| **YORK, PA 17401** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **H. STANLEY REBERT, ESQUIRE** | : | |
| **C/O YORK COUNTY DISTRICT** | : | |
| **ATTORNEY'S OFFICE** | : | |
| **45 NORTH GEORGE STREET** | : | |
| **YORK, PA 17401** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **YORK COUNTY DRUG TASK FORCE** | : | |
| **45 NORTH GEORGE STREET** | : | |
| **YORK, PA 17401** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA** | : | |
| **PENNSYLVANIA STATE POLICE** | : | |
| **1800 ELMERTON AVENUE** | : | |
| **HARRISBURG, PA 17110** | : | |
| | : | |
| **AND** | : | |

-1-

No.: 1:10-CV-1684

|  |  |
|---|---|
| PENNSYLVANIA STATE POLICE COMMISSIONER JEFFREY B. MILLER 1800 ELMERTON AVENUE HARRISBURG, PA 17110 | : : : : : : |
| AND | : : |
| PENNSYLVANIA STATE POLICE COMMISSIONER FRANK E. PAWLOWSKI 1800 ELMERTON AVENUE HARRISBURG, PA 17110 | : : : : : : |
| AND | : : |
| PENNSYLVANIA STATE TROOPER SHAWN A. WOLFE 1800 ELMERTON AVENUE HARRISBURG, PA 17110 | : : : : : |
| AND | : : |
| PENNSYLVANIA STATE TROOPER CHRISTOPHER C. KEPPEL 1800 ELMERTON AVENUE HARRISBURG, PA 17110 | : : : : : |
| AND | : : |
| YORK CITY POLICE DETECTIVE BART SEELIG 50 WEST KING STREET YORK, PA 17401 | : : : : : |
| AND | : : |
| AGENT NAWROCKI ADDRESS UNKNOWN | : : : : |
| DEFENDANTS | :   JURY TRIAL DEMANDED |

No.: 1:10-CV-1684

## AMENDED CIVIL ACTION COMPLAINT

1.       Plaintiff - Cyhien Juba Barnes, Jr., is an adult citizen and a resident of the

Commonwealth of Pennsylvania, residing at 356 West Newton Avenue, York, York

County, Pennsylvania 17401.

2.       Defendant - York County is a municipal corporation organized and existing

under laws of the Commonwealth of Pennsylvania, which maintains its principal office

as captioned.

3.       Defendant - H. Stanley Rebert, Esquire ("Rebert") is former District

Attorney of York County.  Rebert is being sued both individually and in his official

capacity as officer, agent and/or employee of the County of York, the York County Drug

Task Force, and the York County District Attorney's Office.

4.       Defendant - The York County Drug Task Force is an agent of the County of

York and the York County District Attorney's Office, and it maintains its principal offices

as captioned.

5.       York City Police Detective Scott Nadzom, as Defendant, was at all times

material a police office with the City of York Police Department, and assigned to the

York County Drug Task Force.  Detective Scott Nadzom is being sued both individually

and in his official capacity as officer, agent ,and/or employee of Defendant - County of

York, Defendant - York County Drug Task Force, Defendant - H. Stanley Rebert and the

York County District Attorney's Office.

6.       York City Detective Bart Seelig, as Defendant, was at all times material a

police officer with the City of York Police Department and assigned to the York County

Drug Task Force.  Detective Bart Seelig is being sued both individually and in his official

capacity as officer, agent, and/or employee of Defendant - York County Drug Task

Force, Defendant - County of York and Defendant - H. Stanley Rebert and the York

County District Attorney's Office.

7.      Defendant - Agent Nawrocki, is a law enforcement officer whose affiliation

and address are unknown.

8.      The Commonwealth of Pennsylvania, Pennsylvania State Police is

organized and existing under the laws of the Commonwealth of Pennsylvania, and it is a

division of the Commonwealth of Pennsylvania, and it maintains its principal offices as

captioned.

9.      Defendants - Commissioner Jeffrey B. Miller and Commissioner Frank G.

Pawlowski were at all times material the Commissioner or former Commissioner of the

Pennsylvania State Police.  Commissioner Miller and Pawlowski are being sued both

individually and in their official capacity as officers, agents and/or employees of the

Commonwealth of Pennsylvania, Pennsylvania State Police, and the York County Drug

Task Force.

10.     Pennsylvania State Trooper Shawn A. Wolfe, as Defendant, was at all times

material a police officer employed by the Commonwealth of Pennsylvania and assigned

to York County Drug Task Force.

11.     Pennsylvania State Trooper Christopher Keppel as Defendant, was at all

times a police officer employed by the Commonwealth of Pennsylvania and assigned to

York County Drug Task Force.

12.     Trooper Wolfe and Trooper Keppel are being sued both individually and in

their official capacity as officers, agents, and /or employees of Defendants -

Commonwealth of Pennsylvania, Pennsylvania State Police, York County Drug Task Force, the County of York, H. Stanley Rebert and the York County District Attorney's Office.

13.   Agent Nawrocki is being sued both individually and in his official capacity as a law enforcement officer.

14.   The York County Drug Task Force was created by the York County District Attorney's Office at the request of the Commonwealth of Pennsylvania (the Attorney General's Office), and it is the Commonwealth of Pennsylvania, York County and the York County District Attorney's Office which provided the policies and training for same. See the York County Drug Task Force Agreement and Memorandum of Understanding, **which are attached hereto, made a part hereof and incorporated herein as Exhibit "A".**

15.   At all times material, Defendant - H. Stanley Rebert was the District Attorney of York County, and he was the District Attorney of York County on 12, 2008.

16.   At all times material, Defendants - County of York and H. Stanley Rebert were charged with the responsibility of testing, hiring, training, disciplining and supervising members of the York County Drug Task Force, including all of the named Defendants in the instant lawsuit.

17.   At all times material, Defendants - Commonwealth of Pennsylvania, Pennsylvania State Police, Commissioner Jeffrey B. Miller and Commissioner Frank E. Pawlowski were charged with the responsibility of testing, hiring, training, disciplining and supervising members of the Pennsylvania State Police, including Defendants - Shawn A. Wolfe and Christopher C. Keppel, and the York County Drug Task Force,

including all named Defendants in the instant lawsuit.

18.    ~~16.~~ At all times material, Defendants - York City Police Detective Scott Nadzom and York City Police Detective Bart Seelig acted within the course and scope of their employment, under the color of State law and pursuant to the customs, policies and practices of the York County Drug Task Force, the County of York and H. Stanley Rebert, Esquire and the York County District Attorney's Office..

19.    At all times material, Defendants - Troopers Shawn A. Wolfe and Christopher C. Keppel acted within the course and scope of their employment, under the color of State law and pursuant to the customs, policies and practices of the Commonwealth of Pennsylvania, Pennsylvania State Police, Commissioner Jeffrey B. Miller ~~and~~ Commissioner Frank E. Pawlowski, the York County Drug Task Force, York County, H. Stanley Rebert, Esquire and the York County District Attorney's Office.

20.    At all times material, Agent Nawrocki acted within the course and scope of his employment, and under the color of State law and pursuant to the customs, policies and practices of his employer.

21.    This Court has jurisdiction over the Federal law claims pursuant to 28 U.S.C. Sections 1331 and 1343 and jurisdiction over the State law claims pursuant to the principles of pendant and ancillary jurisdiction.

22.    Venue is proper under 28 U.S.C. Section 1391 (b), because the cause of action upon which the complaint is based arose in York City, Pennsylvania, which is in the Middle District of Pennsylvania.

23.    On or about August 12, 2008, at or about 6:20 p.m., Plaintiff was standing at the corner of Penn and Princess Streets, York, Pennsylvania, when an automobile

with Daniel Gooding ("Gooding"), Defendant - York City Police Detective Scott Nadzom

and Defendant - Pennsylvania State Trooper Christopher Keppel pulled up. Plaintiff

thereafter entered the automobile, but he thereafter attempted to exit the vehicle.

24.    Present at the scene were Defendant - Pennsylvania State Trooper Shawn

A. Wolfe, York City Police Detective Bart Seelig, and Agent Nawrocki.

25.    At some point in time on August 12, 2008 an automobile which contained

Pennsylvania State Trooper Wolfe and Agent Nawrocki pulled up, at which point

Defendant - Pennsylvania State Trooper Shawn Wolfe got out of his vehicle, went

running over to the vehicle containing Plaintiff, screaming "I'm going to kill you mother

fuckers". Pennsylvania State Trooper Shawn A. Wolfe thereafter charged the vehicle

containing Plaintiff, and he grabbed Plaintiff screaming out of the vehicle. He then

proceeded to bite Plaintiff in the face before pushing him over to a tree that was on the

South side of the sidewalk. Although Plaintiff began yelling "I give up, I give up",

Pennsylvania State Trooper Wolfe told Plaintiff to "shut the fuck up" and that he had to

teach him a lesson. Pennsylvania State Trooper Wolfe proceeded to bash Plaintiff's head

against a tree, over and over again, until Plaintiff went limp and fell to the ground.

26.    After Plaintiff went limp, Pennsylvania State Trooper Wolfe picked him up

and stated that he was not finished. He asked Agent Nawrocki to use a tazer on Plaintiff

but Agent Nawrocki replied that there was no need and voiced his concern that the

Plaintiff needed medical attention. However, in response Pennsylvania State Trooper

Wolfe called Agent Nawrocki "a pussy", and he threw Plaintiff to the ground.

27.    Thereafter either Pennsylvania State Trooper Wolfe or York City Police

Detective Bart Seelig deployed a tazer and they proceeded to "taze" Plaintiff in the face,

groin and feet.

28.     Thereafter Pennsylvania State Trooper Wolfe picked up a handful of dirt and forced Plaintiff to eat it, and Plaintiff defecated in his pants.

29.     After Plaintiff defecated in his pants, Wolfe exclaimed "oh, did the little baby shit his pants - well now you are going to have to pay for that." Thereafter Wolfe put on a pair of latex gloves as Plaintiff attempted to crawl away, but Wolfe grabbed Plaintiff by the ankles with his right hand and he reached into Plaintiff's pants pulling out a large handful of feces.  Wolfe smeared the feces all over Plaintiff's face and into his mouth, at which point Plaintiff again passed out.  Wolfe then handcuffed Plaintiff and he threw the tazer at Agent Nawrocki, calling Agent Nawrocki "a pussy".

30.     While Pennsylvania State Trooper Shawn Wolfe was beating and abusing Plaintiff, Pennsylvania State Trooper Christopher C. Keppel, York City Police Detective Scott Nadzom, Agent Nawrocki, and York City Police Detective Bart Seelig watched and did nothing.

31.     As a direct and proximate result of the actions of all Defendants and the beating which was being inflicted upon Plaintiff by Pennsylvania State Trooper Wolfe, and Wolfe's biting Plaintiff on the face, Plaintiff began to bleed from his face and mouth, and he sustained serious head injuries, scarring of his face due to the bite, abrasions across his right cheek, zygomatic area, forehead, and left cheek, a closed head injury, acute chest wall contusion, and multiple abrasions to his face.

32.     As a further result of the actions of all Defendants and the aforementioned acts and conduct of Defendant - Pennsylvania State Trooper Shawn Wolfe, Plaintiff suffered severe emotional distress, anxiety, and pain.

33.   As a direct and proximate result of the aforementioned actions of all Defendants and the Defendant - Pennsylvania State Trooper Shawn Wolfe, Plaintiff suffered mental anguish and emotional distress.

34.   As a direct and proximate result of the aforementioned actions of all Defendants and the Defendant - Shawn Wolfe, Plaintiff has been obliged to and may continue to expend various sums of money and to incur various expenditures for medical treatment for an indefinite period of time in the future to his great loss and detriment.

35.   As a direct and proximate result of the aforementioned actions of all Defendants and the Defendant - Shawn Wolfe, Plaintiff has and will hereinafter will incur other financial expenses and losses.

**COUNT I**
**FAILURE TO PROTECT AND BYSTANDER LIABILITY**
**PENNSYLVANIA STATE TROOPER CHRISTOPHER C. KEPPEL, YORK CITY**
**POLICE DETECTIVE SCOTT NADZOM, YORK CITY DETECTIVE BART**
**SEELIG AND AGENT NAWROCKI.**

36.   Paragraphs 1 through 35 are incorporated herein by reference as though each were fully set forth herein at length.

37.   Plaintiff believes and avers that the named Defendants deliberately, recklessly and maliciously failed to take reasonable measures to ensure Plaintiff's health, well being and safety on the above cited occasion and instead encouraged, condoned, facilitated, and permitted the attack upon Plaintiff by Pennsylvania State Trooper Shawn Wolfe.

38.   Plaintiff's injuries at the hands of Pennsylvania State Trooper Shawn Wolfe were a foreseeable and direct consequence of all of the above failures, acts and

No.: 1:10-CV-1684

omissions by Defendants - Pennsylvania State Trooper Christopher C. Keppel, York City

Police Detective Scott Nadzom, York City Police Detective Bart Seelig and Agent

Nawrocki.

39.     All of these actions violated Plaintiff's rights under the 8th and 14th

Amendments to United States Constitution and Article 1, Section 8 and 9 of the

Constitution of the Commonwealth of Pennsylvania and the laws of the United States

and the Commonwealth of Pennsylvania and are in violation of Plaintiff's rights

pursuant to 42 U.S.C. Section 1983.

40.     The above described actions of the Defendants were so malicious,

intentional, and reckless and displayed such a reckless and deliberate indifference to the

Plaintiff's rights and well being, that the imposition of punitive damages is warranted.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiff - Cyhien Juba

Barnes, Jr., demands compensatory and punitive damages against Defendants jointly

and/or severely in an amount in excess of $100,000 plus interest, costs, attorney's fees

and delay damages.

## COUNT II
### EXCESSIVE FORCE UNDER ARTICLE 1, SECTION 8 AND 9 OF THE PENNSYLVANIA CONSTITUTION AND 42 U.S.C. SECTION 1983 PENNSYLVANIA STATE TROOPER SHAWN A. WOLFE

41.     Paragraphs 1 through 40 are incorporated herein by reference, as though

each were fully set forth herein at length.

42.     Plaintiff believes and avers that Defendant - Shawn Wolfe deliberately,

recklessly and maliciously used excessive force on Plaintiff when the force was not

justified under the circumstances to control Plaintiff.

No.: 1:10-CV-1684

43.     Plaintiff avers that Defendant - Shawn Wolfe's actions by biting him in the face, smashing his head against a tree, and making him eat dirt and feces, and "tazing" him violated Plaintiff's Constitutional rights under the 8th and 14th Amendments to the United States Constitution and Article 1, Sections 8 and 9 of the Constitution the Commonwealth of Pennsylvania and the laws of the United States and the Commonwealth of Pennsylvania and were in violation of Plaintiff's rights pursuant to 43 U.S.C. Section 1983.

44.     The above described actions of Defendant - Pennsylvania State Trooper Shawn Wolfe were so malicious, intentional and reckless and displayed such a reckless and deliberate indifference to the Plaintiff's rights and well being, that the imposition of punitive damages is warranted.

45.     As aforesaid, Defendant - Pennsylvania State Trooper Shawn Wolfe, acting within the course and scope of his employment, under the color of State law, and pursuant to the customs, polices and/or practices of the Pennsylvania State Police, Commissioner Jeffrey B. Miller and Commissioner Frank E. Pawlowski, the York County Drug Task Force, York County and H. Stanley Rebert, Esquire deprived Plaintiff of his rights, privileges and immunities under the laws and Constitutions of the Commonwealth of Pennsylvania and the United States; in particular, the right to be free from the use of excessive force: all of which actions violated Plaintiff's rights under the 4th and 14th Amendments to the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the laws of the United States and of the Commonwealth of Pennsylvania.

46.     As aforesaid, Defendant - Pennsylvania State Trooper Shawn Wolfe, acting

-11-

within the course and scope of his employment, under the color of State law, and pursuant to the customs, policies and/or practices of the Defendants, Commonwealth of Pennsylvania, Pennsylvania State Police, Commissioner Jeffrey B. Miller and Commissioner Frank E. Pawlowski, the York County Drug Task Force, York County and H. Stanley Rebert, Esquire, intentionally and maliciously abused Plaintiff, and used his position of authority, illegally and improperly to punish the Plaintiff, by the above described actions, all of which violated the Plaintiff's rights under the 4th and 14th Amendments to the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the laws of the United States and of the Commonwealth of Pennsylvania and were in violation of 42 U.S.C. Section 1983 and Article 1, Sections 8 and 9 of the Pennsylvania Constitution.

47.     As aforesaid, Defendant - Pennsylvania State Trooper Shawn Wolfe, acting within the course and scope of his employment, under the color of State law, and pursuant to the customs, policies and/or practices of Defendants - Commonwealth of Pennsylvania, Pennsylvania State Police, Commissioner Jeffrey B. Miller and Commissioner Frank E. Pawlowski, the York County Drug Task Force, York County and H. Stanley Rebert, Esquire, intentionally and maliciously assaulted and battered Plaintiff, and placed him in imminent bodily harm without just cause or provocation by the above described actions, all of which violated the Plaintiff's rights under the 4th and 14th Amendments to the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the laws of the United States and of the Commonwealth of Pennsylvania .

WHEREFORE, Plaintiff - Cyhien Juba Barnes, Jr., demands compensatory and punitive damages against Defendant - Pennsylvania State Trooper Shawn Wolfe jointly

or severely in an amount in excess of $100,000, plus interest, costs, attorney's fees and other appropriate relief.

## COUNT III
### EXCESSIVE FORCE UNDER ARTICLE 1, SECTION 8 AND 9 OF THE PENNSYLVANIA CONSTITUTION AND 42 U.S.C. SECTION 1983 YORK CITY POLICE DETECTIVE BART SEELIG

48.  Paragraphs 1 through 47 are incorporated herein by reference, as though each were fully set forth herein at length.

49.  Plaintiff believes and avers that Defendant - Detective Bart Seelig deliberately, recklessly and maliciously used excessive force on Plaintiff when the force was not justified under the circumstances to control Plaintiff.

50.  Plaintiff avers that Defendant - Detective Bart Seelig's actions by "tazing" him violated Plaintiff's Constitutional rights under the 8th and 14th Amendments to the United States Constitution and Article 1, Sections 8 and 9 of the Constitution the Commonwealth of Pennsylvania and the laws of the United States and the Commonwealth of Pennsylvania and were in violation of Plaintiff's rights pursuant to 43 U.S.C. Section 1983.

51.  The above described actions of Defendant -Detective Bart Seelig were so malicious, intentional and reckless and displayed such a reckless and deliberate indifference to the Plaintiff's rights and well being, that the imposition of punitive damages is warranted.

52.  As aforesaid, Defendant - Detective Bart Seelig, acting within the course and scope of his employment, under the color of State law, and pursuant to the customs, polices and/or practices of the York County Drug Task Force, York County and H. Stanley Rebert, Esquire, deprived Plaintiff of his rights, privileges and immunities under

the laws and Constitutions of the Commonwealth of Pennsylvania and the United States;
in particular, the right to be free from the use of excessive force: all of which actions
violated Plaintiff's rights under the 4th and 14th Amendments to the Constitution of the
United States, the Constitution of the Commonwealth of Pennsylvania, the laws of the
United States and of the Commonwealth of Pennsylvania.

53.    As aforesaid, Defendant - Detective Bart Seelig, acting within the course
and scope of his employment, under the color of State law, and pursuant to the customs,
policies and/or practices of the York County Drug Task Force, York County and H.
Stanley Rebert, Esquire, intentionally and maliciously abused Plaintiff, and used his
position of authority, illegally and improperly to punish the Plaintiff, by the above
described actions, all of which violated the Plaintiff's rights under the 4th and 14th
Amendments to the Constitution of the United States, the Constitution of the
Commonwealth of Pennsylvania, the laws of the United States and of the
Commonwealth of Pennsylvania and were in violation of 42 U.S.C. Section 1983 and
Article 1, Sections 8 and 9 of the Pennsylvania Constitution.

54.    As aforesaid, Defendant - Detective Bart Seelig, acting within the course
and scope of his employment, under the color of State law, and pursuant to the customs,
policies and/or practices of Defendants - the York County Drug Task Force, York County
and H. Stanley Rebert, Esquire, intentionally and maliciously assaulted and battered
Plaintiff, and placed him in imminent bodily harm without just cause or provocation by
the above described actions, all of which violated the Plaintiff's rights under the 4th and
14th Amendments to the Constitution of the United States, the Constitution of the
Commonwealth of Pennsylvania, the laws of the United States and of the
Commonwealth of Pennsylvania .

-14-

WHEREFORE, Plaintiff - Cyhien Juba Barnes, Jr., demands compensatory and punitive damages against Defendant - Detective Bart Seelig jointly or severely in an amount in excess of $100,000, plus interest, costs, attorney's fees and other appropriate relief.

**COUNT IV**
**PLAINTIFF - CYHIEN JUBA BARNES, JR. VS. COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA STATE POLICE, COMMISSIONER JEFFREY B. MILLER AND COMMISSIONER FRANK E. PAWLOWSKI**

55.     Paragraphs 1 through 54 are incorporated herein by reference, as though each were set forth fully herein at length.

56.     The plaintiff, Cyhien Juba Barnes, believes and therefore avers that Defendants - Commonwealth of Pennsylvania, Pennsylvania State Police, Commissioner Jeffrey B. Miller and Commissioner Frank E. Pawlowski have adopted and maintained for many years a recognized and accepted policy, custom, and/or practice of condoning and/or acquiescing in the use of excessive force by its officers and systematically physically abusing individuals, which policy constitutes the use of excessive force and violates the Fourth and Fourteenth Amendments of the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the laws of the United States and of the Commonwealth of Pennsylvania.

57.     The plaintiff believes and therefore avers that the Defendants - Commonwealth of Pennsylvania, Pennsylvania State Police, Commissioner Jeffrey B. Miller and Commissioner Frank E. Pawlowski have adopted and maintained for many years, a recognized and accepted policy, custom, and/or practice of systematically failing to properly train, supervise and/or discipline police officers, including the individual defendant, State Trooper Shawn Wolfe, regarding constitutional restraints on the use of

force, which policy violates the Fourth and Fourteenth Amendments of the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the laws of the United States and of the Commonwealth of Pennsylvania.

58.   The Defendants - Commonwealth of Pennsylvania, Pennsylvania State Police, Commissioner Jeffrey B. Miller and Commissioner Frank E. Pawlowski have been deliberately indifferent to the rights of citizens of York County to be free from excessive force and their deliberate indifference violates the plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution of the Unites States, the Constitution of the Commonwealth of Pennsylvania, the laws of the United States and of the Commonwealth of Pennsylvania.

WHEREFORE, Plaintiff - Cyhien Juba Barnes, Jr., demands compensatory and punitive damages against Defendant - Commonwealth of Pennsylvania, Pennsylvania State Police, Commissioner Jeffrey B. Miller and Commissioner Frank E. Pawlowski jointly or severely in an amount in excess of $100,000, plus interest, costs, attorney's fees and other appropriate relief.

### COUNT V
### PLAINTIFF - CYHIEN JUBA BARNES, JR. VS. THE YORK COUNTY DRUG TASK FORCE, THE COUNTY OF YORK, AND H. STANLEY REBERT, ESQUIRE

59.   Paragraphs 1 through 54 are incorporated herein by reference, as though each were set forth fully herein at length.

60.   The plaintiff, Cyhien Juba Barnes, believes and therefore avers that Defendants - the York County Drug Task Force,  the County of York, and H. Stanley Rebert, Esquire have adopted and maintained for many years a recognized and accepted policy, custom, and/or practice of condoning and/or acquiescing the use of excessive

force by its officers and systematically physically abusing individuals, which policy constitutes the use of excessive force and violates the Fourth and Fourteenth Amendments of the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the laws of the United States and of the Commonwealth of Pennsylvania.

61.    The plaintiff believes and therefore avers that the Defendants - the York County Drug Task Force, the County of York and H. Stanley Rebert, Esquire have adopted and maintained for many years, a recognized and accepted policy, custom, and/or practice of systematically failing to properly train, supervise and/or discipline its agents, police officers, including the individual defendants, and Pennsylvania State Trooper Shawn A. Wolfe, regarding constitutional restraints on the use of force, which policy violates the Fourth and Fourteenth Amendments of the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the laws of the United States and of the Commonwealth of Pennsylvania.

62.    The Defendants - the York County Drug Task Force, County of York and H. Stanley Rebert, Esquire have been deliberately indifferent to the rights of citizens of York County to be free from excessive force and their deliberate indifference violates the plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution of the Unites States, the Constitution of the Commonwealth of Pennsylvania, the laws of the United States and of the Commonwealth of Pennsylvania.

WHEREFORE, Plaintiff - Cyhien Juba Barnes, Jr., demands compensatory and punitive damages against Defendants - the York County Drug Task Force, the County of York and H. Stanley Rebert, Esquire jointly or severely in an amount in excess of $100,000, plus interest, costs, attorney's fees and other appropriate relief.

**COUNT VI - POLICY, PRACTICE AND CUSTOM**
**PLAINTIFF - CYHIEN JUBA BARNES, JR. VS. COMMONWEALTH OF**
**PENNSYLVANIA, PENNSYLVANIA STATE POLICE, COMMISSIONER**
**JEFFREY B. MILLER AND COMMISSIONER FRANK E. PAWLOWSKI**

63.     Paragraphs 1 through 57 are incorporated herein by reference, as though each were set forth fully herein at length.

64.     The plaintiff believes and therefore avers, that at the time of his arrest, Defendants - Commonwealth of Pennsylvania, Pennsylvania State Police, Commissioner Jeffrey B. Miller and Commissioner Frank E. Pawlowski, knew or should have known of the above described policy, custom and/or practice including but not limited to, inter alia:

      a.     Failure to restrain the use of excessive force on citizens by Pennsylvania State Troopers;

      b.     Failure to properly train, test and/or select its officers in the proper use of force:

      c.     Failure to have clear, concise and appropriate directives;

      d.     Failure to properly supervise and/or control its officers;

      e.     Failure to restrain the use of excessive force, and to have clear, concise and appropriate directives regarding same;

      f.     Failure to have proper counseling, use of force retraining, sensitivity training, psychiatric evaluations and/or supervisory briefing/discussion with members of the Pennsylvania State Police with prior ongoing complaints of excessive force;

      g.     Failure to conduct systematic and complete internal affairs investigations and commanding officers' investigation resulting in appropriate and

documented corrective actions at all levels of the Pennsylvania State Police;

   h.   Failure to prevent Plaintiff from being injured by its Troopers where Defendants knew or had reason to know of the dangerous propensities of said officers;

   i.   Failure to have in existence and/or maintain proper personnel training procedures necessary to prevent the type of conduct as aforesaid;

   j.   Failure to provide adequate guidance, including police directives, as to when it was inappropriate to use of force against individuals;

   k.   Otherwise acting without due regard for the rights, safety and position of the Plaintiff herein, in accordance with the laws of the Commonwealth of Pennsylvania; and

   l.   Failure to train, supervise and discipline officers as to the use of force.

   WHEREFORE, Plaintiff - Cyhien Juba Barnes, Jr., demands compensatory and punitive damages against Defendant - Commonwealth of Pennsylvania, Pennsylvania State Police, Commissioner Jeffrey B. Miller and Commissioner Frank E. Pawlowski jointly or severely in an amount in excess of $100,000, plus interest, costs, attorney's fees and other appropriate relief.

### COUNT VII - POLICY, PRACTICE AND CUSTOM
### PLAINTIFF - CYHIEN JUBA BARNES, JR. VS. THE YORK COUNTY DRUG TASK FORCE, THE COUNTY OF YORK AND H. STANLEY REBERT, ESQUIRE

   65.   Paragraphs 1 through 64 are incorporated herein by reference, as though each were set forth fully herein at length.

   66.   The plaintiff believes and therefore avers, that at the time of his arrest,

Defendants - the York County Drug Task Force, the County of York and H. Stanley Rebert, Esquire, knew or should have known of the above described policy, custom and/or practice including but not limited to, inter alia:

a.    Failure to restrain the use of excessive force on citizens by members of the York County Drug Task Force;

b.    Failure to properly train, test and/or select its officers in the proper use of force:

c.    Failure to have clear, concise and appropriate directives;

d.    Failure to properly supervise and/or control its officers;

e.    Failure to restrain the use of excessive force, and to have clear concise and appropriate directives regarding same;

f.    Failure to have proper counseling, use of force retraining, sensitivity training, psychiatric evaluations and/or supervisory briefing/discussion with members of the York County Drug Task Force with prior ongoing complaints of excessive force;

g.    Failure to conduct systematic and complete internal affairs investigations and commanding officers' investigation resulting in appropriate and documented corrective actions at all levels of the York County Drug Task Force;

h.    Failure to prevent Plaintiff from being injured by its officers where Defendants knew or had reason to know of the dangerous propensities of said officers;

i.    Failure to have in existence and/or maintain proper personnel training procedures necessary to prevent the type of conduct as aforesaid;

j.    Failure to provide adequate guidance, including police

directives, as to when it was inappropriate to use force against individuals;

    k.  Otherwise acting without due regard for the rights, safety and position of the Plaintiff herein, in accordance with the laws of the Commonwealth of Pennsylvania; and

    l.  Failure to train, supervise and discipline officers as to the use of force.

WHEREFORE, Plaintiff - Cyhien Juba Barnes, Jr., demands compensatory and punitive damages against Defendants - the York County Drug Task Force, the County of York and H. Stanley Rebert, Esquire jointly or severely in an amount in excess of $100,000, plus interest, costs, attorney's fees and other appropriate relief.

## COUNT VIII
## ASSAULT AND BATTERY
## CYHIEN JUBA BARNES, JR. VS. PENNSYLVANIA STATE TROOPER SHAWN WOLFE

67.  Paragraphs 1 through 66 are incorporated herein be reference, as though each were fully set forth herein at length.

68.  Plaintiff believes and therefore avers that Defendant - Pennsylvania State Trooper Shawn Wolfe, acting within the course and scope of his authority, wrongfully and unlawfully assaulted and battered the Plaintiff, as more particularly described herein above.

69.  Plaintiff - Cyhien Juba Barnes, Jr. specifically complains of the conduct of Defendant - Pennsylvania State Trooper Shawn Wolfe in physically abusing him.

70.  The above-described actions of Defendant - Pennsylvania State Trooper Shawn Wolfe placed the Plaintiff - Cyhien Juba Barnes, Jr. in the reasonable fear of imminent bodily harm and resulted in the Plaintiff being unlawfully and improperly

assaulted and abused against his will.

71.    As a direct and proximate result of the malicious, intentional and/or reckless actions of Defendant - Pennsylvania State Trooper Shawn Wolfe, the Plaintiff suffered injuries that are described herein.

72.    The above-described actions of Defendant - Pennsylvania State Trooper Shawn Wolfe were so malicious, intentional reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff - Cyhien Juba Barnes, Jr. demands compensatory and punitive damages against Defendant - Pennsylvania State Trooper Shawn Wolfe, jointly and/or severally, for the common low torts of assault and battery, in an amount in excess of $100,000 plus costs, interest, attorney's fees and delay damages.

**COUNT IX**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**CYHIEN JUBA BARNES, JR. VS. PENNSYLVANIA STATE TROOPER**
**SHAWN WOLFE**

73.    Paragraphs 1 through 72 are incorporated herein be reference, as though each were fully set forth herein at length.

74.    Plaintiff believes and therefore avers that Defendant - Pennsylvania State Trooper Shawn Wolfe, through his actions, as more fully set forth in the preceding paragraphs of this Complaint, did inflict serious emotional distress upon Plaintiff in an intentional and/or reckless manner.

75.    The above-described malicious, intentional and/or reckless acts and omissions of Defendant were outrageous, atrocious and completely intolerable in a civilized society and went beyond all possible bounds of decency.

76. The above-mentioned malicious, intentional and/or reckless actions and omissions of Defendant caused and continue to cause the Plaintiff severe emotional distress, anxiety and fear.

77. As a direct and proximate result of the malicious, intentional and/or reckless actions of Defendant the Plaintiff suffered injuries that are described above.

78. The above-described actions of Defendant were so malicious and intentional and displayed such a reckless indifference to Plaintiff's rights and well being, that the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff - Cyhien Juba Barnes, Jr., demands compensatory and punitive damages against Defendant - Pennsylvania State Trooper Shawn Wolfe, jointly and/or severally, for the common law tort of intentional infliction of emotional distress, in an amount in excess of $100,000 plus costs, interest, attorney's fees and delay damages.

### COUNT X
### ASSAULT AND BATTERY
### CYHIEN JUBA BARNES, JR. VS. DETECTIVE BART SEELIG

79. Paragraphs 1 through 78 are incorporated herein be reference, as though each were fully set forth herein at length.

80. Plaintiff believes and therefore avers that Defendant - Detective Bart Seelig acting within the course and scope of his authority, wrongfully and unlawfully assaulted and battered the Plaintiff, as more particularly described herein above.

81. Plaintiff - Cyhien Juba Barnes, Jr. specifically complains of the conduct of Defendant - Detective Bart Seelig in physically abusing him.

82. The above-described actions of Defendant -Detective Bart Seelig placed the

Plaintiff - Cyhien Juba Barnes, Jr. in the reasonable fear of imminent bodily harm and resulted in the Plaintiff being unlawfully and improperly assaulted and abused against his will.

83.     As a direct and proximate result of the malicious, intentional and/or reckless actions of Defendant - Detective Bart Seelig, the Plaintiff suffered injuries that are described herein.

84.     The above-described actions of Defendant - Detective Bart Seelig were so malicious, intentional, reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff - Cyhien Juba Barnes, Jr. demands compensatory and punitive damages against Defendant - Detective Bart Seelig, jointly and/or severally, for the common low torts of assault and battery, in an amount in excess of $100,000 plus costs, interest, attorney's fees and delay damages.

## COUNT XI
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### CYHIEN JUBA BARNES, JR. VS. DETECTIVE BART SEELIG

85.     Paragraphs 1 through 84 are incorporated herein be reference, as though each were fully set forth herein at length.

86.     Plaintiff believes and therefore avers that Defendant - Detective Bart Seelig, through his actions, as more fully set forth in the preceding paragraphs of this Complaint, did inflict serious emotional distress upon Plaintiff in an intentional and/or reckless manner.

87.     The above-described malicious, intentional and/or reckless acts and omissions of Defendant were outrageous, atrocious and completely intolerable in a civilized society and went beyond all possible bounds of decency.

88.     The above-mentioned malicious, intention and/or reckless actions and omissions of Defendant caused and continue to cause the Plaintiff severe emotional distress, anxiety and fear.

89.     As a direct and proximate result of the malicious, intentional and/or reckless actions of Defendant the Plaintiff suffered injuries that are described above.

90.     The above-described actions of Defendant were so malicious and intentional and displayed such a reckless indifference to Plaintiff's rights and well being, that the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff - Cyhien Juba Barnes, Jr., demands compensatory and punitive damages against Defendant - Detective Bart Seelig, jointly and/or severally, for the common law tort of intentional infliction of emotional distress, in an amount in excess of $100,000 plus costs, interest, attorney's fees and delay damages.

Respectfully submitted,

LAW OFFICES OF JEFFREY PHILIP PAUL

Dated:  12/07/2010          By: S/Jeffrey Philip Paul
                            JEFFREY PHILIP PAUL, ESQUIRE

                            TERI B. HIMEBAUGH, ESQUIRE

# EXHIBIT "A"

# DRUG TASK FORCE AGREEMENT

# MEMORANDUM OF UNDERSTANDING

B3-York DA int.
? 3310

COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL

MUNICIPAL DRUG TASK FORCE AGREEMENT

THIS AGREEMENT, made this _1st_ day of __July__, 19_96_
by and among the Commonwealth of Pennsylvania, Office of Attorney
General (hereinafter referred to as OAG), Bureau of Narcotics
Investigation and Drug Control (hereinafter referred to as BNIDC);
the __YORK__ County Office of the District Attorney

_____

_____

__H. Stanley Rebert, District Attorney__, individually and
collectively, (hereinafter Municipalities).

WITNESSETH that:

WHEREAS, the Attorney General has established a municipal drug
task force program throughout Pennsylvania to coordinate narcotics
investigation, enforcement and prosecution activities, and

WHEREAS, the Attorney General has requested the District
Attorney of __York__ County to control and supervise this
municipal drug task force for him, and

WHEREAS, the District Attorney of __York__ County has
agreed to control and supervise this municipal drug task force
pursuant to the terms of the OAG/PaDAA Memorandum of Understanding
(attached hereto and incorporated by reference at Exhibit "___"),
and

WHEREAS, the District Attorney of __York__ has agreed to
account to the OAG for all task force expenditures in the form and

manner prescribed by the OAG in order to ensure uniform task force accountability throughout the Commonwealth, and

WHEREAS, the Municipalities intend to participate in and are a necessary part of these drug task force activities, and

WHEREAS, the parties wish to establish the administrative framework for carrying out their activities under the program in _____York_____ [County].

WHEREAS, mobility and the common problem of illegal use and trafficking of narcotics and other illegal drugs have obliterated municipal boundaries in the Municipalities' enforcement of laws through the Commonwealth of Pennsylvania, and

WHEREAS, municipal police departments themselves have been frustrated by jurisdictional limitations, manpower and equipment shortages and inadequate financial resources in attempting to stem illegal narcotics and drug trafficking, and

WHEREAS, there is an urgent need for uniformity and continuity in the enforcement of such laws in the Commonwealth of Pennsylvania, and

WHEREAS, coordination of police activity in the fight against illegal narcotics and drug trafficking has historically been sporadic, resulting in duplication of effort and reduced coordination, and

WHEREAS, the aforementioned Municipality(ies) has (have) determined that the provision of mutual police aid across jurisdictional lines will increase their (its) ability to enforce the provisions of narcotics and illegal drugs laws and to preserve

2

2.    Any employee of a party to this Agreement shall remain an employee of his or her employer for the purposes of any activity under this Agreement and each party shall maintain and be responsible for all employee compensation, benefits, insurance and other incidents of employment except as provided herein. "No municipal employee assigned under this Agreement shall be deemed to be an employee of the Commonwealth of Pennsylvania except as provided in Act 100 of 1989."

3.    **Term**.

The term of this Agreement shall begin on   July 1, 1996.

4.    **Liability**.

Each party shall be an independent contractor and responsible for its own employees and for the acts of its employees under this Agreement pursuant to law.   Each party shall provide such public liability and other insurance as appropriate to protect against any claims arising out of that party's performance under this Agreement and not otherwise provided.   All parties to this Agreement shall have all rights and liability protection as found in Act 100 of 1989.   Nothing in this Agreement shall be construed to limit the Commonwealth's rights, claims or defenses which arise as a matter of law or pursuant to any provision of this Agreement.   Nothing in this Agreement shall be construed to limit the sovereign immunity of the Commonwealth.

5.    **Municipal Agreements**.

Each municipality shall exercise their best efforts to have and maintain in effect a mutual aid agreement by which the

4

employees of each municipality are authorized to carry out their duties in all other Municipalities within the Task Force region. Each municipality shall submit a copy of the agreement upon request to BNI. These agreements shall be executed pursuant to and in compliance with 53 P.S. § 483 and ratified by mutual ordinance pursuant to 53 P.S. § 485.

6. <u>Termination</u>.

a. Any party may terminate its participation in the Task Force by giving 30 days prior written notice to the other parties to this Agreement.

b. The OAG reserves the right to terminate the operation of the Task Force if the OAG determines that it is in the interests of the Commonwealth to do so.

7. <u>Duties Upon Termination</u>.

Upon termination or expiration of this Agreement, a party shall return to the Commonwealth any and all materials, documents, equipment or other items or property owned by the Commonwealth and held by any party for the purposes of this Agreement. All parties shall assist in bringing to an orderly conclusion all aspects of any Task Force which has been concluded.

8. <u>Overtime</u>.

a. The OAG, through the __York__ County Office of the District Attorney, agrees to reimburse the Municipalities for overtime incurred by Task Force members performing Task Force duties. No reimbursement for overtime will be made unless the __York__ County District Attorney (or his/her

5

designee) has given prior approval to the employee to work the overtime hours.

b. Reimbursement for overtime will be made in accordance with the procedures established by the District Attorney of _____York_____ County.

9. Asset Forfeiture.

a. The process of distribution of assets or proceeds of assets forfeited under the Pennsylvania Controlled Substances Forfeitures Act or any other statute providing for forfeiture shall be distributed pursuant to the provisions of said Act.

b. A District Attorney's Office need not include the OAG as an eligible recipient in any request to a court for awards of Task Force seizures of either real or personal property unless state law enforcement authorities are directly participating in the individual case in which case, distribution will be determined pursuant to the Act.

c. The District Attorney's Office shall have sole authority to authorize federal intervention regarding seizure and prosecution.

d. If federal sharing is authorized, each participating party shall submit the federal form DAG-71, Federal Sharing Request, to the appropriate Office of the United States Attorney.

10. Funds Availability.

The OAG's obligations under this Agreement are contingent upon the appropriation and availability of funds for Task Force

purposes.

11.  **Public Availability of Information**.

The parties agree to comply with any requests or requirements which the OAG is required to make in order to comply with federal requirements relating to the availability to the public of identifiable records or other documents used in the Task Force program.   This provision shall not be construed to require disclosure of information expressly made confidential by another statute.

12.  **Reports**.

Each Municipality shall submit such reports as the OAG, through the District Attorney shall require to meet state and federal reporting requirements.

13.  **Inspection and Audit**.

Each Municipality and District Attorney's Office agrees to provide information to the OAG and access to records and facilities necessary for the OAG to carry out any audits it is obligated to perform under state or federal law.

14.  **Contract Subject to Law**.

The parties shall be bound by all applicable state, federal and local laws in carrying out the work of this Agreement.

15.  **Amendments**.

No changes or modifications to the terms of this Agreement shall be valid or binding unless made in writing agreed to and signed by the parties.

16.  **Assignment**.

No part of this Agreement or any duty hereunder is assignable.

17.   <u>Governing Law</u>.

This   Agreement   will   be   construed   in   accordance   with Pennsylvania law.

18.   <u>Nondiscrimination Clause</u>.

See Attachment 1, which is hereby incorporated into and made part of this contract.   This is the standard nondiscrimination provision required for Commonwealth contracts.   Reference in the provision to contractor shall mean any party to this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement
as of the date first above written.

OFFICE OF ATTORNEY GENERAL

DISTRICT ATTORNEY

9

ATTACHMENT I

NONDISCRIMINATION CLAUSE

During the term of this contract, Contractor agrees as follows:--

1.    Contractor shall not discriminate against any employee, applicant for employment, independent contractor or any other person because of race, color, religious creed, ancestry, national origin, age, or sex. Contractor shall take affirmative action to ensure that applicants are employed, and that employee or agents are treated during employment, without regard to their race, color, religious creed, ancestry, national origin, age or sex. Such affirmative action shall include, but is not limited to, the following:   Employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training. Contractor shall post in conspicuous places, available to employees, agents, applicants for employment and other persons, a notice to be provided by the contracting agency setting forth the provisions of this nondiscrimination clause.

2.    Contractor shall in advertisements or requests for employment placed by it or on its behalf state all qualified applicants will receive consideration for employment without regard to race, color, religious creed, ancestry, national origin, age or sex.

3.    Contractor shall send each labor union or workers' representatives with which it has a collective bargaining agreement

or other contract or understanding, a notice advising said labor union or workers' representative of its commitment to this nondiscrimination clause. Similar notice shall be sent to every other source of recruitment regularly utilized by Contractor.

4.   It shall be no defense to a finding of a noncompliance with Contract Compliance Regulations issued by the Pennsylvania Human Relations Commission or this nondiscrimination clause that contractor had delegated some of its employment practices to any union, training program or other source of recruitment which prevents it from meeting its obligations. However, if the evidence indicates that the Contractor was not on notice of the third party discrimination or made a good faith effort to correct it, such factor shall be considered in mitigation in determining appropriate sanctions.

5.   Where the practices of a union or any training program or other source of recruitment will result in the exclusion of minority group persons, so that Contractor will be unable to meet its obligations under the Contract compliance Regulations issued by the Pennsylvania Human Relations Commission or this nondiscrimination clause, Contractor shall then employ and fill vacancies through other nondiscriminatory employment procedures.

6.   Contractor shall comply with the Contract Compliance Regulations of the Pennsylvania Human Relations Commission, 16 PA Code Chapter 49 and with all laws prohibiting discrimination in hiring or employment opportunities. In the event of Contractor's noncompliance with the non-discrimination clause of this contract

11

or with any such laws, this contract may, after hearing and adjudication, be terminated or suspended, in whole or in part, and Contractor may be declared temporarily ineligible for further Commonwealth contracts, and such other sanctions may be imposed and remedies invoked as provided by the Contractor Compliance Regulations.

7.  Contractor shall furnish all necessary employment documents and records to, and permit access to its books, records and accounts by, the contracting agency and the Human Relations Commission, for purposes of investigation to ascertain compliance with the provisions of the Contract Regulations, pursuant to § 4935 of this title (relating to information concerning compliance by contractors). If Contractor does not possess documents or records reflecting the necessary information requested, it shall furnish such information on reporting forms supplied by the contracting agency or the Commission.

8.  Contractor shall actively recruit minority subcontractors or subcontractors with substantial minority representation among their employees.

9.  Contractor shall include the provisions of this nondiscrimination clause in every subcontract, so that such provisions will be binding upon each subcontractor.

10.  The terms used in this nondiscrimination clause shall have the same meaning as in the Contract Compliance Regulations issued by the Pennsylvania Human Relations Commission, 16 PA Code Chapter 49.

12

11.   Contractor obligations under this clause are limited to the Contractor's facilities within Pennsylvania, or, where the contract is for purchase of goods manufactured outside of Pennsylvania, the facilities at which said goods are actually produced.



## MEMORANDUM OF UNDERSTANDING

**WHEREAS,** the Commonwealth Attorneys Act designates the District Attorney of each county as the chief law enforcement officer of that county, and

**WHEREAS,** the Commonwealth Attorneys Act designates the Attorney General as the chief law enforcement officer of the Commonwealth, and

**WHEREAS,** the General Assembly of the Commonwealth has appropriated certain monies to the Office of Attorney General for the establishment and operation of municipal drug task force programs, and

**WHEREAS,** cooperation and coordination among all investigative and prosecutorial agencies within the Commonwealth is essential to maximize the effectiveness of drug law enforcement efforts at the local, county, state and national levels, and

**WHEREAS,** it is the desire of the Attorney General and the various District Attorneys, through the agency of the Pennsylvania District Attorneys Association, to resolve certain disputes while not affecting those municipal narcotics task force programs which currently operate to the satisfaction of the Attorney General and the respective District Attorneys,

1

NOW THEREFORE, the Attorney General and the Pennsylvania District Attorneys Association enter into this Memorandum of Understanding as to the parameters in which the municipal drug task force program shall operate:

1.  The municipal drug task force programs shall be subject to the control and supervision of the District Attorney of the county in which the task force operates, unless the District Attorney requests that such control and supervision functions be assumed by the Office of Attorney General. Attorney General and Bureau of Narcotics Investigation and Drug Control personnel shall not engage in control or supervision of municipal drug task force activities, unless such control or supervision is specifically requested by the District Attorney. A division of specific control and supervision functions between the Office of Attorney General and the District Attorney may be agreed to by the Office of Attorney General and the District Attorney.

2.  For purposes of this agreement, "control and supervision" shall include: (a) the organization of municipal and county law enforcement personnel into municipal drug task forces; (b) the designation of personnel responsible for day-to-day operational control of task force activities; (c) the determination of investigations and other activities to be undertaken by the task force; (d) the determination of the resources to be devoted to each task force activity; (e) the determination of electronic or other surveillance measures to be employed in any particular task

2

force activity; (f) determinations upon the use of informants and any agreements to be made with informants; (g) approval of search warrants, arrest warrants, and other legal documents or process; (h) an itemized accounting on a quarterly basis for all task force expenditures, which shall be submitted to the Office of Attorney General and made available for the Appropriation Committees of the General Assembly.

3.   If a District Attorney assumes responsibility for control and supervision of a municipal drug task force program, decisions concerning such control and supervision shall be made by the District Attorney in consultation with the local police, the Bureau of Narcotics Investigation and Drug Control and State police, in accordance with the custom and practice of the particular county.

4.   In counties in which the District Attorney has chosen to control and supervise the operation of municipal drug task forces, all Attorney General or Bureau of Narcotics Investigation and Drug Control personnel or agents working on matters involving municipal drug task force programs shall coordinate their municipal drug task force activities at the municipal and county levels through, and work at the general direction of, the District Attorney or his designee.   The Office of Attorney General shall not make independent expenditures for municipal drug task force operations unless authorized by the District Attorney.   Attorney General regional attorneys shall provide

3

supervision and counsel to municipal drug task forces only to the extent agreed to by a District Attorney.

5. In counties in which the District Attorney has chosen to control and supervise the operations of municipal drug task forces, the District Attorney shall consult directly with the appropriate regional office of the Office of Attorney General to secure funding for the operations of the municipal drug task force.

6. Law enforcement personnel participating in municipal drug task force operations shall remain employees of, and be subject to the direct supervision of, the agency or department by whom they are regularly employed.

7. A District Attorney and the Attorney General may establish by mutual agreement responsibility for the initiation and litigation of forfeiture actions resulting from municipal drug task force operations. In counties where the District Attorney has chosen to control and supervise the operation of municipal drug task forces, unless a District Attorney otherwise requests, all forfeiture matters resulting from municipal drug task force operations shall be litigated by the District Attorney and all seized property shall remain in the county in which the property was seized for custodial purposes. A District Attorney shall promptly notify the Office of Attorney General of any and all pending forfeiture litigation resulting from the operation of

4

municipal drug task forces. All forfeitures shall be distributed according to the laws of the Commonwealth of Pennsylvania.

8. In counties in which the District Attorney has chosen to control and supervise the operation of municipal drug task forces, the Attorney General shall consider the funding of a full-time municipal drug task force coordinator, employed by and answerable to a District Attorney, in those counties where such a need exists, at the request of a District Attorney.

9. This Memorandum of Understanding shall not void or in any way invalidate any existing municipal drug task force agreement. However, at the request of a District Attorney, the Attorney General and the District Attorney shall, after due notice to all signators, promptly modify any existing municipal drug task force agreement in accordance with the terms of this Memorandum of Understanding, as requested by a District Attorney.


Ernest D. Preate, Jr.
Attorney General
Commonwealth of Pennsylvania
July 25, 1991

Alan M. Rubenstein
President
PA District Attorneys Assn.
July 25, 1991